<u>**NOT FOR PUBLICATION**</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| GERALDINE GRENCI, et al., | : | CIVIL ACTION NO. 04-5806 (MLC) |
|  | : |  |
| Plaintiffs, | : | **MEMORANDUM OPINION** |
|  | : |  |
| v. | : |  |
|  | : |  |
| OCEAN COUNTY, et al., | : |  |
|  | : |  |
| Defendants. | : |  |

<u>**COOPER, District Judge**</u>

The defendants move pursuant to Federal Rule of Civil Procedure ("Rule") 56(c) for the entry of summary judgment as to the claims asserted against them for, <u>inter alia</u>, violations of Geraldine Grenci's ("Grenci") Fourth Amendment rights.  The plaintiffs cross-moved for the entry of summary judgment in their favor as to the first count of the complaint.  The Court, for the reasons stated herein, will deny the motion and cross motion.

<u>**BACKGROUND**</u>

**I.   Undisputed Facts**

Grenci resides at 1473 Colorado Drive, Toms River, New Jersey with her husband, Angelo Grenci Sr.  (Pls. Br., at 6.) The couple has two sons, Walter and Angelo Jr.  (<u>Id.</u> at 7.) Angelo Jr., is about twenty-nine years old.  (<u>Id.</u>)  He was arrested and incarcerated for the first time at the age of seventeen.  (<u>Id.</u>)  He has been arrested four or five times for various offenses since his first arrest.  (<u>Id.</u> at 8.)  He was set

to stand trial in June 2003, on criminal charges involving a fight.  (Id.)  The trial was postponed, and a new trial was set to begin July 28, 2003.  (Id. at 9.)  Angelo Jr. failed to appear at a status conference before the start of the trial, and warrants for his arrest were issued.  (Id. at 9-10.)  He failed to appear at the trial, and was convicted on aggravated assault and battery charges.  (Id. at 10.)

Officers John Bordonaro ("Bordonaro") and Thomas Fritz ("Fritz") (collectively "the officers") received the warrants for Angelo Jr. on or about July 30, 2003.  (Id. at 13.)  The arrest warrants listed Angelo Jr.'s address as 1473 Colorado Drive. (Id. at 15.)  Other documents that were included in the warrant file listed other addresses for Angelo Jr.  (Id.)

Fritz and Bordonaro went to 1473 Colorado Drive on August 5, 2003 to attempt to serve the arrest warrants.  (Id.)  They observed a teal-colored pick-up truck to the side of the driveway at the home on Colorado Drive.  (Id. at 17.)  They determined that it was registered to Donna Macaluso.  (Id.)  The officers believed that Macaluso was Angelo Jr.'s girlfriend, and that Angelo Jr. was using Macaluso's car for transportation.  (Defs. Br., at 7.)  The officers also spoke with some of the Grencis' neighbors.  (Pls. Br., at 18.)  The officers assert that the neighbors said they saw Angelo Jr. the day before in a black pick-up truck with a female.  (Id.; Defs. Br., at 2.)  The

2

officers left Colorado Drive that day without executing the arrest warrants.  (Pls Br., at 22.)

The officers returned to Colorado Drive on August 6, 2003, at approximately 7 a.m.  They noticed that a white Lincoln Town car was in the driveway, and that the teal pick-up truck was still on the property.  (Id. at 24.)  A DMV check revealed that the white car was owned by Grenci.  (Id.)  Fritz then went to the back of the house and Bordonaro went to the front door.  (Defs. Br., at 2.)  Bordonaro heard someone coming to the front door. He radioed Fritz and told him to get the warrants out of the car and to come to the front of the house.  (Id.)  The parties do not agree upon what occurred after the officers approached the Grencis' front door.

## II.  Disputed Facts

### A.  Plaintiffs' Version of the Incident

The plaintiffs assert that Grenci woke up on August 6, 2003 to a loud banging on her front door.  (Pls. Br., at 29.)  She opened the front door and told Bordonaro that Angelo Jr. was not there.  (Id.)  She alleges Bordonaro continued to ask her where her son was, and she began to feel threatened.  (Id.)  Grenci asked Bordonaro if he had any warrants.  Bordonaro said he did not have to show Grenci anything.  Grenci, however, would not let the officers enter without evidence of a warrant.  (Id. at 29-30.)  As she tried to shut the door, Bordonaro pushed the door

open.  (Id.)  The door hit her foot and she fell backwards towards a set of stairs.  (Id. at 30.)  The stairs' iron railings broke her fall.  (Id.)

The officers entered the house and went downstairs to a room believed to be Angelo Jr.'s bedroom.  (Id. at 32.)  They searched through the room, and the papers found in the room.  (Id.)  Angelo Jr. was not there.  (Id.)  Grenci again asked to see the warrants.  (Id.)  Fritz retrieved the warrants and gave them to Bordonaro.  (Id.)  Bordonaro permitted Grenci to glance at the warrants, and "yanked" them back.  (Id. at 32-33.)  The officers continued to threaten Grenci, and eventually left her home.  (Id. at 33.)

Grenci went to the emergency room on August 6 to have her foot treated for injuries sustained when she was hit by the door.  (Id. at 59.)  She has undergone various surgeries and procedures to remedy the injury to her foot since August 6.  (Id.)  She ambulates with a cane, and was deemed permanently disabled by the Department of Labor.  (Id.)  She asserts that she lost her job as a result of her injuries, and continues to have nightmares about the incident with the officers.  (Id. at 5.)

Grenci brought charges against Bordonaro and Fritz in Dover Township Municipal Court on September 11, 2003.  (Id. at 35.)  She asserted claims for assault and trespass.  (Id.)  She

4

dismissed the charges after the officers threatened to bring assault charges against her.  (Id. at 37.)

### B.   Defendants' Version of the Incident

The defendants assert that when the officers arrived at 1473 Colorado Drive on August 6, Fritz went to secure the back of the house while Bordonaro went to the front door.  (Defs. Br., at 2.) Bordonaro realized someone was coming to the front door and radioed Fritz to get the warrants and come to the front of the house.  (Id.)  Grenci opened the door and spoke with the officers while they stood on the front step.  (Id. at 7.)  She attempted to close the door, but one of the officers put his foot at the base of the doorway to prevent the door from closing.  (Id.)  The door hit Grenci's foot.  (Id.)  The officers entered the house, and looked for Angelo Jr. in a bedroom on the lower floor of the house.  (Id.)  Grenci at some point requested a warrant, and the officers showed it to her.  (Id. at 8.)  The officers left when they determined that Angelo Jr. was not at the house.  (Id.) Grenci drove herself to the emergency room over two hours after the officers left her house.  (Id.)

### C.   Procedural History

The plaintiffs brought an action in this Court on November 22, 2004.  The complaint contains thirteen counts.  It asserts causes of action for (1) invasion of privacy, (2) excessive force, (3) civil conspiracy based on 42 U.S.C. § ("Section") 1983

through Section 1985, (4) failure to train and supervise based on Section 1983, (5) failure to train and supervise regarding the use of force based on Section 1983, (6) failure to conduct an investigation based on Section 1983, (7) assault and battery, (8) civil conspiracy regarding assault and battery, (9) intentional infliction of emotional distress, (10) negligent infliction of emotional distress, (11) trespass, (12) John and Jane Doe count, and (13) loss of consortium.  (Compl.)  The claims are asserted against Ocean County, the Ocean County Sheriff's Department, Sheriff William Polehemus, Lieutenant Valerie Hill, Sergeant James Manley, Detective Bordonaro, Detective Fritz, and John and Jane Does.

The defendants move for summary judgment.  (Dkt. entry no. 19.)  The plaintiffs cross-move for the entry of partial summary judgment in their favor as to the first count of the complaint. (Dkt. entry no. 20.)  The Court has read the papers submitted in support of and opposition to the motion and cross motion, and decides them without oral argument pursuant to Rule 78.

## DISCUSSION

The defendants argue that the Court should enter summary judgment in their favor because (1) the officers had the right to enter 1473 Colorado Drive because they reasonably believed it was Angelo Jr.'s residence and that he was present, (2) the officers did not use excessive force when entering the house, (3) the

officers are entitled to qualified immunity, and (4) the
plaintiffs have not established that a policy or custom of the
municipality caused the alleged constitutional tort.  (Defs. Br.,
at 9, 11, 14, 17, 26.)  The plaintiffs in opposition, and in
support of the cross motion argue (1) the officers did not have
sufficient information to reasonably believe Angelo Jr. lived at
1473 Colorado Drive and was present there, (2) Grenci had a right
to prevent the officers from entering her home, (3) the officers'
entry was an unreasonable use of force, (4) the officers are not
entitled to qualified immunity because they violated clearly
established constitutional privileges, and (5) the Ocean County
Sheriff's Department failed to provide proper training.  (Pls.
Br., at 64, 95, 102, 105.)

## I.    Standard for Summary Judgment

Rule 56(c) provides that summary judgment is proper "if the
pleadings, depositions, answers to interrogatories, and
admissions on file, together with the affidavits, if any, show
that there is no genuine issue as to any material fact and that
the moving party is entitled to a judgment as a matter of law."
The party moving for summary judgment bears the initial burden of
showing that there is no genuine issue of material fact.  Celotex
Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once the summary
judgment movant has met this prima facie burden, the nonmoving
"must set forth specific facts showing that there is a genuine

issue for trial." Fed.R.Civ.P. 56(e).  A nonmoving must present actual evidence that raises a genuine issue of material fact and may not rely on mere allegations.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249 (1986).

The Court must view the evidence in the light most favorable to the nonmoving when deciding a summary judgment motion. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).  At the summary judgment stage, the Court's role is "not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  <u>Anderson</u>, 477 U.S. at 249.  "By its very terms, this standard provides that the mere existence of <u>some</u> alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no <u>genuine</u> issue of <u>material</u> fact."  <u>Id.</u> at 247-48 (emphasis in original).  A fact is material only if it might affect the action's outcome under governing law.  <u>Id.</u> at 248. "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." <u>Id.</u> at 249-50 (citations omitted).

## II.   Count 1 - Invasion of Privacy

### A.   Legal Standard

The plaintiffs allege that Bordonaro and Fritz violated the Fourth Amendment when they entered and searched the home without a search warrant, in the absence of exigent circumstances or consent.  (Compl., at 10.)  The Fourth Amendment provides "the right of people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures shall not be violated."  U.S. Const. Amend. IV.  "It is a basic principle that searches and seizures inside a home without a warrant are presumptively unreasonable."  Payton v. New York, 445 U.S. 573, 587 (1980).  Entry into a home to conduct a search or to make an arrest must be done pursuant to a warrant.  Steagald v. United States, 451 U.S. 204, 213 (1981).

Police do not need both an arrest warrant and a search warrant to enter the home of a suspect.  "[A]n arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within."  Payton, 445 U.S. at 603; see also United States v. Agnew, 407 F.3d 193, 196 (3d Cir. 2005) (citing Payton).  An arrest warrant alone, however, does not permit the police to enter and search the home of a third-party for the subject of an arrest warrant.  Steagald, 451 U.S. at 216; see also Agnew, 407 F.3d at 196.  To lawfully

9

enter a home to execute an arrest warrant without a search warrant, the police must have a reasonable belief that the suspect (1) resides there, and (2) is within the residence at the time of entry. United States v. Veal, 453 F.3d 164, 167 (3d Cir. 2006); United States v. Bervaldi, 226 F.3d 1256, 1263 (11th Cir. 2000); see also State v. Miller, 777 A.2d 348, 351 (N.J. App. Div. 2001) (adopting same two-part test as a matter of state law). The beliefs need not be correct. The suspect need not actually live at the place in question, but an officer's belief that the suspect resides, and is present at the location must be reasonable. United States v. Risse, 83 F.3d 212, 216 (8th Cir. 1996); see also United States v. Lovelock, 170 F.3d 339, 343 (2d Cir. 1999) (stating that the officers' belief need not be correct, but must be reasonable); United States v. Route, 104 F.3d 59, 62-63 (5th Cir. 1997) (noting that whether the suspect actually lived at the searched address was irrelevant so long as the police did sufficient due diligence to form a reasonable belief that the suspect lived there).

Direct surveillance or actual viewing of the suspect is not required. Valdez v. McPheters, 172 F.3d 1220, 1226 (10th Cir. 1999). The police "may take into account the fact that a person involved in criminal activity may be attempting to conceal his whereabouts." Id. Factors that have been considered relevant to the formation of the requisite reasonable belief are (1) the

presence or absence of an automobile, (2) the address provided by
the suspect, (3) the observations and statements of neighbors,
and (4) the time of day when the police are attempting to serve
the warrant.  See Veal, 453 F.3d at 167-68 (considering the
address listed on the parole warrant, the statements of the
suspect's former landlord, and the location of car registered to
the suspect's mother); Bervaldi, 226 F.3d at 1263 (considering
that it was not unusual for young adults to use their parents'
address for correspondence while they may not actually live there
day to day, and noting that officers may presume that a person is
home at certain times of the day, for example in the early
morning); Valdez, 172 F.3d at 1226 (suspect's presence may be
suggested by the presence of an automobile); Lovelock, 170 F.3d
at 345 (finding it noteworthy that other tenants answered
affirmatively when asked if the suspect lived in the relevant
apartment).

    **B.  Application**

    To grant summary judgment in favor of either party on the
invasion of privacy claim, the Court must find that there is no
genuine issue of material fact.  The factual accounts offered by
the parties in this action, however, vary.  Both parties agree
that (1) the officers had arrest warrants for Angelo Jr., (2) the
arrest warrants listed Angelo Jr.'s address as 1473 Colorado
Drive, (3) the plaintiffs reside at 1473 Colorado Drive, and (4)

the officers entered the plaintiffs' home to arrest Angelo Jr.
The parties also agree that Payton and Steagald are the relevant
standards to be considered.  The parties differ, however, on the
proper conclusion to be drawn from the facts they assert.

The officers, here, did not have a warrant to search 1473
Colorado Drive.  They had warrants to arrest Angelo Jr.  As
recognized in Payton, an arrest warrant permits police to enter a
suspect's dwelling.  Payton, 445 U.S. at 603.  An arrest warrant
alone, however, does not permit the police to enter the home of a
third-party to arrest the subject of an arrest warrant.  See
Steagald, 451 U.S. at 216.  The legality of the officers'
conduct, therefore, depends on whether the officers (1)
reasonably believed 1473 Colorado Drive was Angelo Jr.'s
residence, and (2) Angelo Jr. was in the house on August 6, 2003.

The defendants, in support of their position that the
officers did reasonably believe Angelo Jr. lived at 1473 Colorado
Drive, and was present there the morning of August 6, 2003,
assert that 1473 Colorado Drive was the address (1) listed on the
warrants, (2) provided by Angelo Jr. when he made bail, and (3)
given by Angelo Jr. for the receipt of mail from the court.
(Defs. Br., at 9.)  The officers spoke to neighbors on August 5,
2003 who indicated they had seen Angelo Jr. the previous day.
(Id. at 12.)  They noticed a black pick-up truck that they
believed to be registered to Angelo Jr.'s girlfriend.  (Id.)

12

"The officers stated that this information, when considered in conjunction with the information obtained from the neighbors, added to the suspicion that the subject was living at the house and that he may be using someone else's car for transportation." (Id.)  The next day the officers arrived at seven in the morning, and noticed the same pick-up truck, and a Lincoln Town car that had not been there the previous day.  This led the officers to believe Angelo Jr. was there.  (Id.)  The defendants also assert that because Grenci tried to shut the door on them, appeared upset, and was behaving erratically contributed to their belief that Angelo Jr. was in the house.  It would only be rational for a mother to try and protect her son.  (Id. at 20-21; Defs. Reply, at 17.)[1]

The plaintiffs, in support of their position that the officers' beliefs that Angelo Jr. lived and was present at 1473 Colorado Drive was not reasonable, assert that before August 6, 2003, the officers conducted no surveillance of 1473 Colorado Drive.  They did not observe Angelo Jr. at the residence.  (Pls. Br., at 83.)  They point out that the warrant file provided

---

[1] The Court notes that the defendants assert that Grenci's behavior contributed to the officers' reasonable belief that Angelo Jr. was in the house.  The Court, however, makes no determination as to whether this fact is properly considered in evaluating the reasonableness of the officers' belief. The Court recognizes that considerations that are relevant to the determination of reasonable belief are those observations or facts obtained prior to the entry.  Valdez, 172 F.3d at 1226 n.3 (information gained after entry is not relevant).

alternative addresses for Angelo Jr.  (Pls. Reply, at 93.)  The
officers, however, did not conduct an independent investigation
to determine if Angelo Jr. lived on Colorado Drive.  The
neighbors did not confirm that Angelo Jr. lived there.  (Pl. Br.,
at 84.)  With respect to the teal pick-up truck registered to
Macaluso, the plaintiffs assert "[i]t is absurd to suggest that
the fact that this pick-up truck was on the Plaintiffs' property
and was registered to Donna Macaluso, without more, provided the
Officers with a reasonable belief that the suspect lived at the
property."  (Id.)  There was no evidence that Angelo Jr. knew
Macaluso, or that she was his girlfriend.  Id.

     The conflicting factual assertions, and conclusions that can
be drawn from them, demonstrate that there are genuine issues of
material fact as to the plaintiffs' invasion of privacy claim.
The parties agree that the propriety of the officers' actions
depends on the reasonableness of the officers' beliefs that
Angelo Jr. lived, and was present at the Colorado Drive
residence.  Whether the officers' beliefs were reasonable is a
question of fact.  Such factual determinations are properly
reserved for the trier of fact in this case.  Both the
defendants' motion for the entry of summary judgment in their
favor, and the plaintiffs' cross motion for the entry of summary
judgment in their favor as to the invasion of privacy claim will
be denied.

## III. Count 2 - Excessive Force

Excessive force claims must be viewed in connection with the constitutional right that has allegedly been violated.[2]  They must also be analyzed according to the specific constitutional standard governing that right, rather than some generalized "excessive force standard."  <u>Graham</u>, 490 U.S. at 394.  "The Fourth Amendment's prohibition against unreasonable seizures does not only pertain to 'when' but also to 'how' the seizure is carried out."  <u>Id.</u> at 395.  All excessive force claims against law enforcement officers in the context of an arrest or other seizure, therefore, must be analyzed under the Fourth Amendment's objective reasonableness standard.  <u>Id.</u>[3]  Determining whether the amount of force used during a seizure was reasonable requires careful balancing of the intrusion on the individual's Fourth Amendment rights and the governmental interest at stake.  <u>Id.</u> at 396.

---

[2] Grenci asserts that the use of excessive force is a violation of the Fourth and Fourteenth Amendments.  The claim, however, is properly evaluated under the Fourth Amendment standard only.  <u>Graham v. Connor</u>, 490 U.S. 386, 395 (1989) ("Today we make explicit . . . and hold that *all* claims that law enforcement officers have used excessive force . . . should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach.").

[3] A seizure triggering the protections of the Fourth Amendment occurs when government actors by means of physical force or shows of authority restrain the liberty of a citizen.  <u>Graham</u>, 490 U.S. at 395 n.10.

The inquiry focuses on whether the officers' actions were "objectively reasonable" in light of the facts and circumstances confronting them at the time of the seizure, without regard to their underlying intent or motivation.  Id. at 397.  "The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer at the scene."  Id. at 396.  As a result, "not every push and shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment."  Id.  The reasonableness of the use of force is usually an issue for the trier of fact.  Rivas v. City of Passaic, 365 F.3d 181, 198 (3d Cir. 2004).

Accepting plaintiffs' version of the facts, and giving them the benefit of all reasonable inferences, as we must on a summary judgment motion, the Court concludes that the entry of summary judgment in favor of the defendants as to the excessive force claim is not appropriate.  The parties' accounts of the confrontation on August 6 differ, and raise genuine issues of material fact with respect to the excessive force claim.

The plaintiffs allege that Grenci asked to see the warrants when the police came to her door.  (Pls. Br., at 29.)  Bordonaro yelled at her, and said that he did not have to show her anything.  (Id. at 30.)  Grenci started to close the door because she was not going to let the officers in without a warrant.  (Id.)  Bordonaro then forcefully pushed the door open into

16

Grenci, hitting her foot and causing her to fall back against the iron railings of her steps. (Id.) She went to the hospital, and has had ongoing complications from the injury her foot sustained. The defendants assert that Grenci attempted to close the door on them, so one of the officers put his foot at the base of the door to prevent the door from closing. (Defs. Br., at 14.) The officers believed that Angelo Jr. (1) lived in the house, and (2) was in the house at that time, and that their entry based on the arrest warrants was lawful. Grenci was closing the door to prevent their entry to protect her son. (Id. at 15.) They assert there is no evidence that the officers touched Grenci. (Id. at 16.)

An excessive force inquiry must balance the plaintiffs' constitutional rights with the government's interest. Here, the government had an interest in arresting Angelo Jr. It, however, has not yet been determined if the officers intruded upon the plaintiffs' Fourth Amendment rights. Whether the alleged force used against Grenci was excessive depends on the objective reasonableness of the officers' actions at the time. When viewed in the light most favorable to the plaintiffs, the facts are sufficient to raise a genuine issue of material fact as to the force used by the officers. In light of the varying accounts, and not yet decided invasion of privacy claim, summary judgment

17

must be denied.  Resolution of the excessive force claim depends
on factual determinations that are reserved for the fact finder.

**IV.  Remaining Claims**

The plaintiffs' remaining claims assert various causes of
action pursuant to Section 1983 and the common law.  The parties'
moving papers do not address each claim individually.  They
address the Fourth Amendment invasion of privacy and excessive
force claims, qualified immunity, and municipal liability.  The
Court declines to make detailed legal rulings as to the remaining
claims based on the present state of the record.

Counts 2, 4, 5, and 6 assert claims pursuant to Section
1983.  Section 1983, however, is not a source of substantive
rights.  <u>Graham</u>, 490 U.S. at 396.  It only provides a cause of
action when a federal right conferred elsewhere is violated.  <u>Id.</u>
The plaintiffs allege that the defendants violated the Fourth
Amendment right to be free from (1) unlawful search and seizure,
and (2) excessive and unreasonable force.  The claims against the
municipality regarding the failure to train, and conduct an
investigation relate to the officers' alleged violation of the
Fourth Amendment.  Count 11 which asserts a claim for trespass
also depends on the propriety of the officers' conduct at 1473
Colorado Drive on August 6.  As discussed, <u>supra</u>, there is a
genuine issue of material fact as to whether the officers'
actions violated the Fourth Amendment.  The Court, therefore,

18

will not enter judgment in favor of the defendants as to the claims based on Section 1983 or trespass.

To the extent that the defendants seek the entry of summary judgment in their favor as to the non-Section 1983 claims, the motion is denied without prejudice to renew in pre-trial or post-trial motions as appropriate.  The claims were not discussed in detail in the parties' moving papers and opposition, except insofar as they may be directed to the alleged violation of the Fourth Amendment.  The Court, therefore, is unable to determine that there is no genuine issue of material fact as to these claims in order to enter summary judgment in favor of the defendants.

## V.    Qualified Immunity

The officers argue that they are entitled to qualified immunity.  (Defs. Br., at 17.)  To determine if the officers are entitled to qualified the Court must answer two questions.  The Court must first ask "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?"  Saucier v. Katz, 533 U.S. 194, 201 (2001).  If no constitutional right would have been violated, no further inquiry is necessary.  Id.  If a violation could be established, the Court must ask whether the right alleged to be violated was clearly established.  Id.  The defendant must be denied protection of the qualified immunity

doctrine if "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Id. at 202. Stated differently, the issue in deciding whether a right is "clearly established" is "whether, given the established law and the information available to" the defendant, a reasonable officer in defendant's position "could have believed that [the] conduct was lawful." Doe v. Delie, 257 F.3d 309, 318 (3d Cir. 2001).

The Court, here, will not grant the part of the defendants' motion for summary judgment based on qualified immunity. To determine if the officers are entitled to qualified immunity, the Court must consider whether (1) the entry into the home and the force used to gain that entry violated Grenci's constitutional rights, and (2) those rights were clearly established if her rights were violated. The facts surrounding these inquiries, however, are in dispute. Whether Grenci's rights were violated depends on the reasonableness of the officers' beliefs. The resolution of factual disputes are reserved for the trier of fact, and the Court will not enter summary judgment in favor of the defendants based on qualified immunity. See Rivas, 365 F.3d at 201 (affirming denial of summary judgment based on qualified immunity due to factual disputes).

<u>**CONCLUSION**</u>

The Court, for the reasons stated <u>supra</u>, will deny the motion and cross motion for summary judgment.  The Court will issue an appropriate order.

<u>    s/ Mary L. Cooper    </u>
**MARY L. COOPER**
United States District Judge
